**Joe R. Traylor,** OSB No. 964412
E-mail: jrt@hartwagner.com
**Holly E. Pettit,** OSB No. 003506
E-mail: hep@hartwagner.com
**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

Of Attorneys for The New IEM, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Delaware corporation, dba CED POWER,<br><br>Plaintiffs,<br><br>v.<br><br>NOVA GROUP, INC., a California corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>Defendants. | Case No. 3:18-cv-01905-SB<br><br><br><br><br>**MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**<br><br>*Oral Argument Requested* |
| UNITED STATES OF AMERICA for the use and benefit of CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Delaware corporation, dba CED POWER,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>INDUSTRIAL ELECTRIC MFG., INC., a suspended California entity; and RESOURCE ENGINEERED PRODUCTS, LLC, an Oregon limited liability company; and THE NEW IEM, LLC, a California limited liability company,<br><br>Third-Party Defendants. | |

Page 1 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

## LR 7-1 CERTIFICATION

Counsel for the New IEM, LLC ("IEM") has conferred through email and telephone communications with counsel for Consolidated Electrical Distributors, Inc. ("CED") to resolve this dispute. The parties were able to resolve the dispute regarding the proper party name. However, the parties have been unable to resolve their dispute regarding arbitration, necessitating this motion.

## MOTION

IEM moves for an Order dismissing the third-party claims against IEM pursuant to Rule 12(b)(1) and Rule 12(b)(3), in light of the parties' currently pending arbitration. Alternatively, IEM moves for an order staying the third-party claims against IEM pending contractual arbitration. This Motion is based on the following memorandum of points and authorities, the Declaration of Edward Herman, the Declaration of Holly E. Pettit, and the accompanying exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.**     **Summary of Argument**

The First Amended Third Party Complaint (ECF No. 35), like its predecessor (ECF No. 22), is wrong on the facts and was filed in the wrong forum. Although Plaintiff has now dismissed the incorrectly named entity (ECF No. 31), this Court still lacks subject matter jurisdiction over this matter and this matter is filed in an improper venue. The parties, through a December 2014 agreement, seven separate invoices sent to CED from IEM, and seven separate invoices paid by CED to IEM, agreed to arbitration and, pursuant to the terms of the Federal Arbitration Act, must arbitrate any and all related disputes. CED accepted the arbitration agreement by accepting IEM's quote, ordering IEM's products, and paying IEM's invoices. Any and all third-party claims against IEM must be dismissed or stayed, in light of the currently pending arbitration.

/ / /

Page 2 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

**HART WAGNER LLP**
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

B.   **Background**

    1. Parties

The New IEM, LLC was formed in 2003 with the filing of Limited Liability Company Articles of Organization with the California Secretary of State. Declaration of Edward Herman ("Herman Dec."), ¶ 7. IEM is authorized and does business within the County of Alameda and State of California. *Id.* At times since December 1, 2003, IEM has done business as "Industrial Electrical Mfg." *Id.* IEM is a manufacturer of electrical distribution equipment. *Id.*

The Third Party Complaint (ECF No. 22) incorrectly named a defunct California corporation, Industrial Electrical Mfg, Inc. ("IEM Corporation"), which has not operated since approximately 2002. *Id.* at ¶ 8. IEM Corporation is not related to IEM. *Id.* at ¶ 8. CED has now dismissed IEM Corporation. (ECP No. 31.)

CED is a distributor of electrical equipment with operations in California. IEM believes CED is a Delaware corporation with a principal place of business in Texas, but doing business in and from Anaheim, California. For purposes of the transactions relevant to this matter, IEM did business with CED in and from California.

The Nova Group, Inc. ("Nova"), a general engineering contractor, was CED Power's prime contractor on the Bonneville Dam project and is believed to be a California corporation doing business from its principal place of business in Napa, California.

    2. Underlying Transaction/Arbitration Requirement

In or about March 2013, IEM received a credit reference from CED relating to CED's credit worthiness to purchase product from IEM and to pay IEM accordingly. Herman Dec., 11. In December 2014, CED requested and received a quotation from IEM relating to the purchase of equipment from IEM relating to the Bonneville Job (Quote No: 45089rev1). *Id.* ¶ 17. That quotation specifically stated, in part, that:

> "IEM is pleased to offer the following quotation for your consideration. **Any order resulting from this quotation will be accepted by IEM only on the basis of IEM's General Terms and Conditions of Sale** . . ."

Page 3 -  **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

*See* Exhibit 1 to the Declaration of Holly E. Pettit (bold added).

CED first ordered specialty manufactured equipment from IEM for use in the Bonneville Dam project (the "Equipment") pursuant to a purchase order dated December 19, 2014. *Id.* From approximately August 2017 through February 2018, IEM delivered the Equipment, the Equipment was accepted by CED and by its prime contractor Nova, IEM sent invoices to CED for the Equipment, and IEM received payments from CED for the Equipment pursuant to the invoices. *Id.* at ¶ 12.

Specifically, IEM sent CED the following invoices:

| **Invoice No.** | **Invoice Date** | **Invoice Amount** |
|---|---|---|
| IF0000007391 | 8/24/2017 | $     0.00 |
| IF0000007518 | 8/31/2017 | $781,812.50 |
| IF0000008391 | 10/31/2017 | $492,132.50 |
| IF0000008896 | 12/5/2017 | $ 55,870.00 |
| CF0000000318 | 12/13/2017 | <$79,768.00>[1] |
| IF0000009127 | 12/19/2017 | $     0.00 |
| IF0000010165 | 2/28/2018 | $     0.00 |

*See* Exhibit A to the Herman Dec.

Pursuant to CED's Check No. 02100087 dated 11/01/17 in the amount of $679,827.00 and Check No. 2280134 dated 6/07/18 in the amount of $570,992.00, and some minor adjustments totaling approximately $772.00, CED paid IEM in full for the Equipment and referenced invoices. Herman Dec. ¶13; Exhibit B to the Herman Dec.

Each of the invoices contained IEM General Terms and Conditions of Sale which, among other terms and conditions, provided for arbitration. Specifically, IEM General Terms and Conditions of Sale provides:

/ / /

---

[1] Adjustment to Invoice No. 1F0000007518.

Page 4 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

"**ARBITRATION**

Any claim arising out of or related in any way to the purchase of goods or services by purchaser, or arising out of or related to these General Terms and Conditions, shall be submitted to binding arbitration before an arbitrator selected by the American Arbitration Association. Such arbitrator shall be knowledgeable in the construction industry, and such arbitration shall be conducted in accordance with the rules of the American Arbitration Association in Fremont, CA. The award entered by the arbitrator may be enforced in any court of competent jurisdiction in Alameda County, CA."

*See* Exhibit A to the Herman Dec. (appearing every other page) (bold in original.)

IEM would not have done business with CED Power without application of IEM General Terms and Conditions of Sale, including the provision for arbitration. Herman Dec., ¶ 18.

3. <u>Oregon Matter Commenced/Post-Transaction Communications</u>

In/about January 2019, IEM received correspondence from CED and CED's attorney dated December 31, 2018, addressed to the IEM Corporation, not IEM. *Id.* ¶19. That correspondence asserted, in part, that (1) CED had sued its prime contractor, Nova, and Nova's bond sureties for unpaid CED invoices; (2) Nova had counterclaimed against CED for uncalculated offsetting sums; and (3) CED wanted IEM Corporation to undertake CED's debt collection litigation against Nova. *Id.*

Upon IEM's receipt of that correspondence from CED, IEM contacted Nova and was informed that Nova had no claims against IEM regarding the Equipment delivered to the Bonneville Dam project. *Id.* at ¶ 20. Nova informed IEM that other equipment, identified as Filnor switches previously provided by CED, proved non-conforming and that Nova had withheld final payment from its contract with CED—all unrelated to the Equipment provided by IEM. *Id.*

IEM, through counsel, advised CED and its attorney, in writing, that they were suing the wrong entity, they were wrong on the facts, and they were in the wrong forum. *Id.* at ¶ 22. As discussed above, the parties have now resolved the dispute regarding CED's naming of the wrong entity.

Page 5 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

4. Arbitration with the American Arbitration Association

On February 27, 2019, IEM commenced contractual arbitration with the American Arbitration Association ("AAA") against CED regarding claims arising out of or related to the purchase of goods or services by CED and/or arising out of or related to IEM General Terms and Conditions ("AAA Matter"). *See* Exhibit 2 to the Declaration of Holly E. Pettit. Any dispute between CED and IEM must proceed in the AAA Matter, in light of the IEM General Terms and Conditions. On March 19, 2019 CED submitted its response to AAA.

**C.   Arbitration is Proper Under the FAA.**

Under the Federal Arbitration Act, arbitration agreements are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). Courts must resolve all doubts *in favor* of arbitration. *See Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 475-76 (1989). An order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wardlow v. U-Haul Int'l, Inc.*, 6:17-CV-01100-AA, 2018 WL 1558450, at *6 (D. Or. Mar 30, 2018).

In the context of a motion to compel arbitration, the burden of proof is on the party contesting arbitration. *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Any doubts as to the scope of an arbitration agreement should be resolved in favor of arbitrability. *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir. 1999).

The seven separate invoices sent to CED included, in the IEM General Terms and Conditions of Sale, a valid mandatory arbitration provision. The invoices specified that "[a]ny claim arising out of or related in any way to the purchase of goods or services by purchaser, or arising out of or related to these General Terms and Conditions, shall be submitted to binding arbitration before an arbitrator selected by the American Arbitration Association." Exhibit A to

Page 6 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

the Herman Dec. There can be do dispute that CED's third-party claims against IEM arise out of and are related to CED's purchase of good from IEM.

CED is expected to argue that it did not agree to the arbitration provision, because its December 2014 purchase order did not include an arbitration provision. First, there is no evidence the purchase order sent to IEM actually included any of the "terms" that CED now relies on. Second, IEM's original quotation makes clear, however, that "[a]ny order resulting from this quotation will be accepted by IEM only on the basis of IEM's General Terms and Conditions of Sale. Notice of exception to any conflicting requirements is hereby given." Exhibit 1 to the Pettit Dec., p. 1.

Each of the invoices sent to CED in 2017 and 2018 included the arbitration provision at issue. CED did not provide any notice of exception or statement of disagreement with any of those invoice provisions. CED's 2014 Purchase Order clearly could not constitute a rejection of IEM's 2017 and 2018 invoices. Instead, CED accepted IEM's products and paid the invoices, completing the contract and accepting the terms under which IEM's products were offered. IEM would not have done business with CED if CED had not accepted the terms and conditions. *See* Herman Dec., ¶18. Any contract between CED and IEM included IEM's General Terms and Conditions of Sale.

Any dispute regarding the arbitration provision should be resolved in the AAA Matter. Gateway questions of arbitration agreement formation should be decided by the arbitrator(s) when there is unmistakable evidence of the party's intent to that effect. *First Options of Chicago Electric Co. v. Liberty Mutual ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017). Rule 7 of the AAA Commercial Rules (Amended and Effective October 1, 2013) provides:

> "R-7. Jurisdiction
>
> **(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> **(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration

Page 7 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award."

(Bold in original.)

The parties' clear and unmistakable intent was to do business pursuant to IEM's General Terms and Conditions of Sale, and to delegate, pursuant thereto, the issues of the arbitrator's jurisdiction and arbitrability to the arbitrator. CED cannot deny its agreement with IEM, because that agreement is the premise upon which the third-party claims are based. *See* Amended Third Party Complaint (ECF No. 35), ¶ 8 (alleging that "[p]rior to and through December 11, 2017, CED furnished materials to the Project at the request of Nova and pursuant to agreement with Nova. **CED purchased such material from IEM and REP pursuant to agreements with each**.") (bold added). CED cannot now claim it had no agreement with IEM. *See Filanto, S.p.A. v. Chilewich Intern. Corp* 789 F.Supp. 1229, 1240 (S.D.N.Y. 1992) (indicating that plaintiffs cannot have it both ways by suing on a written instrument and then repudiating it after defendant points out that it contains an arbitration clause).

The Federal Arbitration Act provides authority for the court to stay a matter that is referable to arbitration "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. In light of the enforceable arbitration provision in IEM's General Terms and Conditions of Sale, this Court lacks subject matter jurisdiction over CED third-party claims against IED. Additionally, CED's third-party claims are filed in an improper venue. Therefore, those claims must be dismissed or abated, pursuant to the Federal Arbitration Act, Rule 12(b)(1), and Rule 12(b)(3).

/ / /

/ / /

/ / /

Page 8 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301

## CONCLUSION

For the reasons set forth above, this Court should enter an Order dismissing CED's third-party claims against IEM or, in the alternative, staying such claims pending resolution of the current arbitration action.

Respectfully submitted this 28th day of March, 2019.

        HART WAGNER LLP

By:   /s/ *Holly E. Pettit*
      Joe R. Traylor, OSB No. 964412
      Holly E. Pettit, OSB No. 003506
      Of Attorneys for Third-Party Defendant
      THE NEW IEM, LLC

Page 9 - **MOTION TO DISMISS THE NEW IEM, LLC OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION**

HART WAGNER LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
Telephone: (503) 222-4499
Facsimile: (503) 222-2301