Douglas R. Hookland, OSB No. 872583
drh@scott-hookland.com
Bob L. O'Halloran, Jr., OSB No. 134437
bob@scott-hookland.com
Scott ◆ Hookland LLP
9185 SW Burnham
Tigard, OR 97223
P.O. Box 23414
Tigard, OR 97281-3414
(503) 620-4540

Attorneys for Use Plaintiff and Third-Party Plaintiff
Consolidated Electrical Distributors, Inc., dba CED Power

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of CONSOLIDATED ELECTRICAL DISTRIBUTORS, INC., a Delaware corporation, dba CED POWER,<br><br>        Plaintiff,<br><br>    vs.<br><br>NOVA GROUP, INC., a California corporation; FEDERAL INSURANCE COMPANY, an Indiana corporation; and LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>        Defendants,<br><br>_____ | Case No. 3:18-cv-01905-SB<br><br>RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION |

PAGE 1 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

UNITED STATES OF AMERICA for the use
and benefit of CONSOLIDATED
ELECTRICAL DISTRIBUTORS, INC., a
Delaware corporation, dba CED POWER,

    Third-Party Plaintiff,

 vs.

INDUSTRIAL ELECTRIC MFG., INC., a
suspended California entity; and RESOURCE
ENGINEERED PRODUCTS, LLC, an
Oregon limited liability company,

    Third-Party Defendants.

## RESPONSE

   Plaintiff and third-party plaintiff United States of America, for the use and benefit of

Consolidated Electrical Distributors, Inc., doing business as CED Power ("CED"), hereby

responds to The New IEM, LLC's ("The New IEM") Motion to Dismiss, or, in the alternative,

Stay Proceedings on CED's Third-Party Complaint. CED requests that the court deny The New

IEM's motion in its entirety. CED relies on the arguments herein, the declarations and exhibits

attached hereto, and the court's own file.

///

///

///

PAGE 2 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE
ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING
ARBITRATION

## MEMORANDUM

## RELEVANT FACTUAL BACKGROUND[1]

CED is a wholesale distributor of electrical materials, including switch gear. Declaration of Steve Monis ¶ 2 ("Monis Decl."). CED is a first-tier material supplier to the Nova Group, Inc., the prime contractor on a federal construction project led by the U.S. Army Corps of Engineers located near Portland, Oregon, called Bonneville Lock and Dam ("Project"). Monis Decl. ¶ 3. For the Project, CED purchased certain materials from The New IEM. Monis Decl. ¶ 4.

Disputes between the various parties on the Project arose, and on October 31, 2018, CED filed a Federal Miller Act lawsuit in the United States District Court for the District of Oregon ("Action"). Monis Decl. ¶ 5; *See* ECF 1 (CED Complaint). In response to the complaint, Nova Group, Inc. asserted a counterclaim against CED, asserting CED furnished materials out of specifications and in a delayed manner, causing damage. *See generally* ECF 10 (Nova Group Answer). In response to Nova's counterclaim, CED has brought into this suit two suppliers to CED, including The New IEM. *See* ECF 22 (CED Third-Party Complaint); *see also* ECF 35 (First Amended Third-Party Complaint).

On February 26, 2019, The New IEM filed for private, binding arbitration of this dispute with the American Arbitration Association ("AAA"), venued in California, and mailed notice of the filing on February 27, 2019. *Id.* After counsel for CED became aware of that filing, and

---

[1] The relevant facts referenced in this response largely mirror to facts stated in CED's pending Motion for Temporary Restraining Order and Preliminary Injunction. CED reasserts those facts for purposes of completeness.

PAGE 3 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

received Notice from AAA on March 5, 2019 about the arbitration, counsel began discussions with The New IEM's counsel about that arbitration, and attempted to have that arbitration dismissed because CED believes that it is under no obligation to arbitrate before AAA. Based on discussions with counsel for The New IEM, The New IEM's position is that the terms and conditions included in its quote for the goods at issue in this case require arbitration of disputes about those goods, and that CED is bound by those terms and conditions. CED attempted to resolve this dispute without the need for seeking relief from this court, but those attempts were not fruitful. The New IEM then moved to dismiss this suit. ECF 47 (Motion to Dismiss).

In its Motion to dismiss and supporting declarations, The New IEM claims it furnished a quotation to CED for certain materials, identified as Quotation No.: 45089rev1. ECF 47, ¶ 3 (The New IEM Motion to Dismiss). This quote is not to CED, but rather to Resource Engineering. Monis Decl. ¶ 6. Therefore, this quote, and any of The New IEM sale terms incorporated therein, cannot be part of any contract between The New IEM and CED. The New IEM has not produced any quote issued by The New IEM to CED.

As stated in The New IEM's Motion to Dismiss, CED ordered certain materials from The New IEM during the course of the Project pursuant to purchase orders. *See* ECF 46 (The New IEM Motion to Dismiss); Monis Decl. ¶ 7. However, The New IEM neglected to include in its Motion any of the purchase orders CED sent to The New IEM. An example of a CED purchase order accompanies this motion. Monis Decl. Ex. B. Notably, the amount of goods ordered, together with CED's terms and conditions of purchase ("CED Purchase Terms") are all referenced in the purchase order, and those terms were set out as part of CED's purchase order as set forth at the

PAGE 4 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

bottom of page 1 of the purchase order. *Id.* Over the course of the project, in response to purchase orders, The New IEM would invoice CED for materials it supplied to CED. Monis Decl. ¶ 8. An example on The New IEM's invoice accompanies this Motion. Monis Decl. Ex. C. Nothing on the invoice states or implies that The New IEM Sale Terms are part of the invoice, and at the bottom of the invoice it states "page 1 of 1". *Id.*

CED denies that it ever assented to The New IEM's terms and conditions. Monis Decl. ¶ 9. Rather, it is CED's position that, in the purchase order CED sent to The New IEM for the goods at issue in this case, CED expressly conditions its purchase order for those goods on CED's own terms and conditions. Monis Decl. ¶ 10. CED's terms and conditions do not contain an arbitration clause or similar dispute resolution clause. Monis Decl. ¶ 11.

Despite no agreement to arbitrate, The New IEM has pressed on with its intent to arbitrate this dispute. The AAA arbitration scheduling letter from March 5, 2019 required that the parties object to jurisdiction by no later than March 19, 2019, which CED did. *See* Exhibit A to Declaration of Bob L. O'Halloran, Jr. ("O'Halloran Decl."). CED desires that it not be subject to alternate and inconsistent rulings from different courts or forums, or be subject to the decisions of a forum to which it never consented. Monis Decl. ¶ 12. The New IEM is presently pushing to adjudicate the arbitrability of this matter before AAA, rather than before this court. O'Halloran Decl. Ex. B. However, on April 5, 2019, and after CED has filed its Motion for TRO, AAA dismissed The New IEM's application for arbitration, stating that it lacked jurisdiction and that The New IEM failed to provide the correct filing fee. O'Halloran Decl. Ex. C. However, The New

PAGE 5 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

IEM's counsel has informed undersigned counsel that The New IEM will not withdraw its Motion to Dismiss, and requires an order from this court regarding arbitrability.

ANALYSIS

As argued in its Motion for Temporary Restraining Order, ECF 49, CED disputes that it ever agreed to arbitrate any claim asserted in this lawsuit with The New IEM, and further disputes that the arbitration clause in The New IEM's terms of sale are part of the contract between the parties.  AAA has also agreed that it lacks jurisdiction to arbitrate this case. On that basis alone, this court, not an arbitrator, has subject matter jurisdiction over this case. Additionally, because the Project is in Oregon, venue in this court is proper. Nevertheless, because this court has an independent obligation to assess jurisdiction, the analysis below shows that CED never agreed to arbitration with The New IEM for any claims asserted in this lawsuit. Accordingly, because CED asserts a Miller Act bond claim, this court has subject matter jurisdiction, venue is proper, and this court should deny The New IEM's Motion to Dismiss as a result.

## I.    Burden of Proof.

The New IEM correctly points out in its Motion to Dismiss that when interpreting an arbitration clause, the burden is on the party opposing arbitration to show that the clause does not apply to a particular claim or dispute. ECF 46 p. 6 (Motion to Dismiss).  However, The New IEM fails to inform this court that the party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telcoms. Am.*, LLC, 845 F3d 1279, 1283 (9th Cir. 2017) (*quoting Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

PAGE 6 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

Here, because The New IEM seeks to dismiss or stay this case in order to enforce an arbitration agreement, The New IEM, not CED, bears the burden of proof to show that the parties agreed to arbitration. As will be shown, The New IEM has not met and cannot meet its burden.

## II. This Court has Federal Question Jurisdiction Over CED's Miller Act Claims, and Supplemental Jurisdiction of CED's Third-Party Claims.

Under the Federal Arbitration Act ("FAA") "[s]ection 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983); *Legacy Wireless Servs. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1049 (D. Or. 2004). Federal courts possess federal question jurisdiction of Miller Act claims. 40 U.S.C. § 3133(b)(4); *United States ex rel. Air Control Techs. v. Pre Con Indus.*, 720 F.3d 1174, 1175 (9th Cir. 2013). Federal Courts have supplemental jurisdiction over claims that are ancillary or pendant to Miller Act bond claims. 28 U.S.C. § 1367(a); *see United States use of Cent. Rigging & Contracting Corp. v. Paul Tishman Co.*, 32 F.R.D. 223, 226 (E.D.N.Y. 1963).

Here, CED has asserted a Miller Act bond claim, and, because of counter claims from defendants, third-party indemnity and contribution claims against The New IEM. Accordingly, this court would have jurisdiction over the third-party claims, presuming that the FAA does not compel arbitration. As will be shown, the FAA does not compel arbitration in this case.

///

PAGE 7 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE
ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING
ARBITRATION

### III.    The FAA Does Not Compel Arbitration Because CED and The New IEM Never Agreed to Arbitrate Claims Asserted in This Lawsuit

The FAA creates federal substantive law regarding arbitration under the authority of the Interstate Commerce Clause and confers to federal courts the authority to compel arbitration. 9 U.S.C. §§ 3, 4; *see Blue Cross of Cal. v. Anesthesia Care Assoc.*, 187 F.3d 1045, 1050 (9th Cir. 1999); *see also Juiceme, Ltd. Liab. Co. v. Booster Juice, Ltd. P'ship*, 730 F Supp 2d 1276, 1280 (D. Or. 2010). By the same token, this court has the power to enjoin a party from arbitrating where an agreement to arbitrate is absent; it is the "concomitant of the power to compel arbitration where it is present." *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) (*citing A.B.C., Inc. v. American Federation of Television & Radio Artists*, 412 F. Supp. 1077 (S.D.N.Y.1976)).

As the New IEM points out, ordinarily, there is a strong presumption in favor of arbitration under the FAA. 9 USCS §§ 9, 10. The New IEM neglects to inform this court, though, that the strong presumption in favor of arbitration does not apply when courts are examining whether the parties agreed to submit their disputes to arbitration. Indeed, the "liberal federal policy regarding the scope of arbitrable issues is inapposite" when the question is "whether a particular party is bound by the arbitration agreement." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F3d 1279, 1291 (9th Cir 2017) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)); *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995) (reasoning that if courts applied the general presumption in favor of arbitration to the

PAGE 8 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

question of arbitrability, it "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide").

Rather, presuming there is an agreement that concerns interstate commerce, courts must first independently review legal questions regarding whether the parties agreed to submit their disputes to arbitration, and, if there is an agreement to arbitrate, then determine whether the agreement to arbitrate extends to the dispute at issue. *First Option*, 514 U.S. at 943 ("the court should decide the question just as it would any other question that the parties did not submit to arbitration, namely, independently[.]"); *see also Wilson Constr. Co. v. Scheffler Nw., Inc.*, No. 3:16-cv-00173-YY, 2016 U.S. Dist. LEXIS 136398, at \*4 (D. Or. Sep. 8, 2016) (*citing Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). This is partly because the question of arbitrability—whether the parties agreed to arbitrate or not—is an issue for judicial determination, not by an arbitrator. *PaineWebber, Inc. v. Bahr, No. 94-36026*, 1996 U.S. App. LEXIS 25314, at \*10-11 (9th Cir. Sep. 24, 1996) (*quoting AT&T Technologies Inc. v. Communications Workers et al.*, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986) ("The question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")).

While the interpretation of an agreement to arbitrate (or not) is generally a matter of state law, *Arthur Andersen LLP v. Carlisle* 556 U.S. 624, 630-631, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009) (*citing Perry* v. *Thomas*, 482 U.S. 483, 493, n. 9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)), the FAA imposes certain rules of fundamental importance, including the basic precept that

PAGE 9 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

arbitration "is a matter of consent, not coercion," *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). "[A] party may not be compelled under the FAA to submit to [] arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 1775, 176 L. Ed. 2d 605, 624 (2010). Contrary to The New IEM's claims, there is no agreement to arbitrate disputes in this case.

IV.    **CED Did Not Agree to Arbitrate Because Oregon's or California's Enactment of UCC Article 2-207 Cause the New IEM's Arbitration Clause to Drop Out of the Contract.**

This dispute is a classic UCC Article 2-207 battle of the forms. The New IEM sent its Quote, though not to CED, subject to its own terms and conditions. CED sent its own purchase orders to The New IEM, and expressly conditioned its purchase orders on its own terms and conditions.  As will be explained, this means that neither party accepted the others terms and conditions. Nevertheless, because the parties did deliver and pay for the goods at issue in this case, there is a valid and enforceable contract, but only on those terms that did not conflict. Because the arbitration clause is a conflicting term, it drops out, leaving the parties with the remedies they would ordinarily have under the UCC—filing suit in court.  An arbitration agreement's existence is a condition precedent to enforcement, and a party "cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347 (1960).

///

PAGE 10 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

**A.      The Federal Arbitration Act Applies State Law to Determine Whether the Parties Agreed to Arbitration.**

The parties contracted for goods to be shipped from California for delivery in Oregon, meaning the parties' transaction concerns interstate commerce. As such, under *Moses*, the FAA applies. As noted above, in determining what the parties agreed to, under the FAA, courts apply state law contract principles in order to interpret the agreement. *First Options*, 514 U.S. at 944; *see also Varela v. Lamps Plus, Inc.*, 701 F. App'x. 670, 672 (9th Cir. 2017).

Here, The New IEM is a manufacturer and seller of electrical materials and electrical gear, all of which are goods. CED is a distributor of electrical materials and electrical switch gear. Though unaddressed by The New IEM in its Motion to Dismiss, both parties are considered merchants under the UCC, because both deal in these goods. ORS 72.0104 (defining "Merchant"); Cal. Com. Code § 2104 (defining "Merchant"). Under either Oregon or California contract interpretation methods, each state's enactment of Article 2 of the Uniform Commercial Code would apply to this transaction. As will be shown, under either state's enactment of the UCC, there is no agreement to arbitrate, and, hence, no right to compel arbitration because, in applying either state's enactment of UCC § 2-207 regarding the battle of the forms, there was no definite and seasonable expression of acceptance of the arbitration clause, and any potential acceptance by CED was expressly conditioned upon its own terms and conditions.

**B.      There is no Agreement Signed by CED and The New IEM.**

As an initial matter, The New IEM is claiming its invoices include The New IEM's Sale Terms, but they do not. Nowhere on the face of the invoice does it state that The New IEM Sale

PAGE 11 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

Terms are included as part of the invoice.  *See* Monis Decl. Ex. C. In fact, at the bottom of the invoice it states "Page 1 of 1".  *Id.* Therefore, The New IEM Sale Terms are not even part of each invoice.

The New IEM also claims it issued a quotation to CED, also subject to The New IEM's terms and conditions, but the quote was issued to Resource Engineering and not to CED.  *See* Monis Decl. Ex. A. The New IEM has not produced any quote issued by The New IEM to CED. The New IEM does not assert that CED orally accepted The New IEM's terms.  Even presuming that The New IEM's quote is an offer to CED, CED memorialized its purchases of materials from The New IEM by way of written purchase orders sent to The New IEM, which included the CED Purchase Terms.  *See* Monis Decl. Ex. B.  Section 1 of the CED Purchase Terms provide as follows: "No order is valid unless signed by Buyer's authorized representative.  This order is expressly limited to acceptance in accordance with its terms, including those set forth below and on the other side hereof." (emphasis added). *Id.* As such, The New IEM cannot assert that only its quote, along with its terms and conditions, make up the entirety of the contract between the parties – ignoring UCC § 2-207. Rather, some other document or expression must make up the contract. As will be shown, the parties' actions determined the contract.

### C.    CED Expressly Conditioned its Offer Upon its Own Sale Terms, and The New IEM Did the Same.

As previously noted, CED memorialized its purchases of materials from The New IEM by way of purchase orders sent to The New IEM, which included the CED Purchase Terms.  *See* Monis Decl. Ex. B.  The Oregon version of the UCC should control over California's version

PAGE 12 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

because the electrical materials and switch gear were shipped to the Project, which is in Oregon, and installed on the Project. Nevertheless, whether the Oregon or California version of the UCC controls is irrelevant, because both Oregon's (ORS 72.0207) and California's (Cal Com. Code § 2207) adoption of UCC § 2-207 regarding the battle of the forms are the same.

Applying Section 2-207 to this case, under either statute, there is no arbitration clause within the contract. Presuming that CED's purchase order is the offer, and The New IEM's invoice is an acceptance or confirmation, there are differing terms that negate acceptance. First, The New IEM Sale Terms are not incorporated into or made a part of The New IEM's invoice. Therefore, such terms and conditions cannot be part of any contract formed between The New IEM and CED. Second, even if those Sales Terms are part of The New IEM's invoice, under UCC § 2-207(2)(a), such terms and conditions do not become part of the contract. Both ORS 72.0207(2)(a) and Cal Com. Code § 2207(2)(a) provide as follows:

> "The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer."

Section 1 of the CED Purchase Terms expressly limit acceptance to the CED Purchase Terms. CED is unaware of any written acceptance from The New IEM of CED's sale terms. Therefore, the New IEM Sale Terms, including the arbitration provision therein, could not become part of the contract between the parties, presuming that CED's purchase order constitute the offer.

///

PAGE 13 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

**D.    The Parties' Actions Determined the Contract, and That Did Not Include Any Arbitration Agreement.**

Absent express acceptance, under both ORS 72.0207(3) and Cal Com. Code § 2207(3), there is no agreement between the CED Purchase Terms and The New IEM Sale Terms on how disputes will be resolved, and therefore the arbitration clause in The New IEM Sale Terms does not apply.  Both state provisions provide as follows:

> "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under other provisions [of each state's code]."

By conduct, CED and The New IEM formed a contract because CED purchased and paid for certain materials and The New IEM furnished them.  However, the CED Purchase Terms and The New IEM Sale Terms universally disagree, including on dispute resolution. The CED Purchase Terms do not include an arbitration provision, and in fact require The New IEM to defend and indemnify CED from all claims, suits, and judgments.  In contrast, The New IEM Sale Terms call for arbitration.  There is no agreement to arbitrate because the CED Purchase Terms, the offer, do not include an arbitration clause.  Therefore, the arbitration clause in The New IEM Sale Terms is not a term of the contract between CED and The New IEM.

**E.    Even if The New IEM Did Furnish a Quote to CED, Followed by a CED Purchase Order, There is Still No Assent to Arbitration.**

First, The New IEM did not issue a quote to CED.  Therefore, CED's purchase order is the offer, and the above analysis applies, and there is no agreement to arbitrate.  Second, even

PAGE 14 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

assuming The New IEM issued a quote to CED having The New IEM Sale Terms, there is still no agreement to arbitrate.  Section 2-207(1) in both states provides as follows:

> "A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."

CED did not accept The New IEM Sale Terms because section 1 of the CED Purchase Terms states CED's order is expressly limited to the CED Purchase Terms.  Therefore, under ORS 72.0207(1) or Cal Com. Code § 2207(1), CED's purchase order did not accept any The New IEM quote or The New IEM Sale Terms, including the arbitration provision.  ORS 72.0207(2) or Cal Com. Code § 2207(2) do not apply because no contract was formed under section (1). Even if those provisions apply, because The New IEM's Quote was conditioned upon its own terms, ORS 72.0207(2)(a) or Cal Com. Code § 2207(2)(a) preclude acceptance.

As such, under Section 2-207(3), the parties formed a contract by conduct because CED ordered materials and paid for them, and The New IEM furnished the materials and shipped them to the Project.  As a result, the arbitration clause in The New IEM Sale Terms is not a term of the parties' contract because the CED Purchase Terms do not include an arbitration clause.  Therefore, there is no agreement to arbitrate and so this court, not AAA, has jurisdiction over this dispute.

**V.     Venue is Proper in Oregon Because the Miller Act Project at Issue in This Dispute is in Oregon.**

28 U.S.C. § 1391(b)(2) states that venue is proper in a judicial district where "a substantial part of property that is the subject of the action is situated[.]" CED's Miller Act claim concerns a

PAGE 15 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION

project located in this judicial district of Oregon. As shown above, there is no agreement to arbitration. As such, venue is therefore proper, and The New IEM's Motion to Dismiss for Improper Venue should be denied.

<u>CONCLUSION</u>

For the reasons stated herein, plaintiff requests that the court deny The New IEM's Motion to Dismiss.

DATED this 11th day of April, 2019

SCOTT◆HOOKLAND LLP

s/ Bob L. O'Halloran, Jr.
Bob L. O'Halloran, Jr., OSB#134437
bob@scott-hookland.com
Douglas R. Hookland, OSB #872583,
Trial Attorney
drh@scott-hookland.com
Of Attorneys for Use Plaintiff and Third-Party Plaintiff Consolidated Electrical Distributors, Inc., dba CED Power

PAGE 16 – RESPONSE TO MOTION TO DISMISS THE NEW IEM LLC, OR, IN THE ALTERNATIVE, MOTION TO STAY THIRD-PARTY COMPLAINT PENDING ARBITRATION